UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____       │
│ DATE FILED: September 30, 2013       │
└─────────────────────────────────────┘
```

CANADA DRY DELAWARE
VALLEY BOTTLING COMPANY,
AND CANADA DRY POTOMAC CORP.,

                          Petitioners,

        v.

HORNELL BREWING CO., INC.,

                          Respondent.

**MEMORANDUM**
**OPINION & ORDER**

11 Civ. 4308 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Petitioners Canada Dry Delaware Valley Bottling Company ("Canada Dry Delaware") and Canada Dry Potomac Corporation ("Canada Dry Potomac") (collectively "Canada Dry") have filed a motion to enforce this Courts' May 1, 2012 judgment (Dkt. No. 15) against Respondent Hornell Brewing Co., Inc. ("Hornell").  (Dkt. No. 18)  Canada Dry contends that Hornell is violating the judgment, which confirmed an arbitration award partially in Canada Dry's favor, by selling certain AriZona iced tea products in Canada Dry's exclusive distribution areas, and by refusing to honor Canada Dry's exclusive distribution rights unless Canada Dry agrees to sell AriZona products at prices set by Hornell.  For the reasons stated below, Canada Dry's motion to enforce will be granted in part and denied in part.

## BACKGROUND

### I.      THE DISTRIBUTION AGREEMENTS

#### A.      Canada Dry Delaware

Respondent Hornell is the producer and brand owner of AriZona iced tea and other beverages.  (Taglienti Decl. (Dkt. No. 21), Ex. A, pt. 1 at 1)  On March 17, 1997, Hornell and Canada Dry Delaware entered into two distribution agreements in which Hornell appointed

Canada Dry Delaware the perpetual and exclusive distributor of "Exclusive Products," as defined by Schedule A-1 of those agreements, in certain counties in Delaware, New Jersey, and Pennsylvania.  (Taglienti Decl., Ex. A, pt. 1 (the "NJ/DE Agreement") at 1, pt. 2 (the PA Agreement") at 1)  Schedule A-1 of the distribution agreements defines Exclusive Products as "[a]ll non-alcoholic beverage products in all product sizes, except those set forth in Schedule A-2."  (NJ/DE Agreement at 37, PA Agreement at 37)

Schedule A-2 identifies certain products that Canada Dry may distribute on a non-exclusive basis, including "7.7 ounce cans, tetra packs, 64 ounce bottles, 128 ounce bottles and 16 ounce glass bottles."  (NJ/DE Agreement at 38, PA Agreement at 38)  The "16 ounce glass bottles are non-exclusive only as to sale to so-called non-traditional beverage outlets such as club stores and stores such as K-Mart, Walmart, Target, Caldor and the like [located outside of the Philadelphia and New York metropolitan areas]."  (NJ/DE Agreement at 38, PA Agreement at 38)

Based on these provisions, there is no restriction on Hornell's distribution of 7.7 ounce cans, tetra packs, 64 ounce bottles, and 128 ounce bottles in Canada Dry Delaware's territory, and Hornell may likewise distribute 16 ounce glass bottles to non-traditional beverage outlets, such as club stores.  Canada Dry Delaware has the exclusive right to distribute all other AriZona products in its territory.  (See Wise Decl. (Dkt. No. 22), Ex. B (Second Interim Award of Arbitrators Regarding Liability, dated Dec. 7, 2010 (the "Second Interim Award")) at 5)

**B.   Canada Dry Potomac**

On December 23, 1998, Hornell and Canada Dry Potomac entered into a distribution agreement in which Canada Dry Potomac became the perpetual and exclusive distributor of "Exclusive Products," as defined by Schedule A-1 of the agreement, in certain

counties in Maryland and in Washington D.C.  (Taglienti Decl., Ex. B (the "Potomac

Agreement"))  Schedule A-1 of Canada Dry Potomac's distribution agreement defines Exclusive

Products as "[a]ll non-alcoholic, non-carbonated beverage products in all product sizes, except

those set forth in Schedule A-2."  (Id. at 22)  Schedule A-1 further states that Hornell

> shall have the exclusive right to sell the Exclusive Products in [Canada Dry
> Potomac's] Territory directly (but not indirectly) only to the following six (6) club
> chain stores:  BJ's, Costco, WalMart, K-Mart, Caldor and Sam's Club (the 'Club
> Stores'), and [Hornell] shall pay to [Canada Dry Potomac], at the end of each
> quarter, $1.50 for each [24-pack of Exclusive Products] sold to the Club Stores
> during that quarter.

(Id.)  Schedule A-2 identifies certain products that Canada Dry may distribute on a non-exclusive

basis:  "all 7.7 ounce cans, tetra packs, and all packages of Products larger than 1-Liter."  (Id. at

23)

Based on these provisions, Hornell may distribute 7.7 ounce cans, tetra packs, and

"all packages of Products larger than 1-Liter" to any purchaser in Canada Dry Potomac's

territory.  Hornell also has the exclusive right to sell Exclusive Products  to BJ's, Costco,

WalMart, K-Mart, Caldor and Sam's Club in Canada Dry Potomac's territory.  Canada Dry

Potomac otherwise has the exclusive right to distribute AriZona products in its territory.

(Second Interim Award at 5)

C.      **Arbitration Provisions**

All three distribution agreements contain the following arbitration provision:

"Any and all disputes hereunder other than a failure by [Canada Dry] to satisfy its payment

obligation to [Hornell] . . . shall be resolved by arbitration. . . ."  (NJ/DE Agreement at 33, PA

Agreement at 33, Potomac Agreement at 18-19)  The distribution agreements further provide that

> [t]he arbitrators shall have the authority to provide that the prevailing party to any such arbitration shall be reimbursed by the other party for all costs and expenses incurred in connection therewith, including attorneys' fees.  Absent any such award, each party shall be responsible for its own costs and expenses. . . .

(NJ/DE Agreement at 33, PA Agreement at 33, Potomac Agreement at 19)

## II.     THE INITIAL ARBITRATION

In 2005, Canada Dry filed – in accordance with the distribution agreements – a Demand for Arbitration with the American Arbitration Association alleging that Hornell had violated the agreements' exclusivity provisions (the "Initial Arbitration").  Canada Dry Del. Valley Bottling Co. v. Hornell Brewing Co., Inc., No. 07 Civ. 8037 (SHS) (RLE), 2009 WL 890097, at *3 (S.D.N.Y. Mar. 31, 2009).  The panel in the Initial Arbitration ruled that the parties had entered into a binding settlement as set forth in a November 14, 2006 letter prepared by Canada Dry's arbitration counsel and a handwritten addendum (the "November Letter Agreement"), and an undated Settlement Agreement and Mutual Release.  Id.  "[T]he November Letter Agreement . . . contains certain carve-outs to Canada Dry's exclusivity rights . . . [and allows Hornell to distribute,] among other things . . . 16 ounce glass bottles to three club stores (Sam's Club, BJ's and Costco), 16 ounce and 20 ounce glass bottles to three convenience stores, and products of 12 ounces or less, or greater than one liter, to certain supermarkets." (Second Interim Award at 5 (emphasis added))  The arbitrators issued a Consent Award memorializing their ruling.  Canada Dry, 2009 WL 890097, at *4.  On September 28, 2007, this Court issued an order confirming the Consent Award, and it was entered as a judgment on October 1, 2007.  Id.

## III.    THE SECOND ARBITRATION

On August 12, 2009, Canada Dry filed another Demand for Arbitration alleging, inter alia, that Hornell had violated the distribution agreements and prior settlement by (1) "making direct and indirect sales of 16 and 20 ounce PET [(plastic)] bottles to retailers in

[Canada Dry's] territories," and (2) "refusing to allow [Canada Dry] to distribute PET bottles on an exclusive basis."[1]  (Second Interim Award at 4-5)  The second arbitration was conducted in three stages, with liability issues addressed in the second stage, and remedies in the third stage. (See id. at 9; id., Ex. K (Third and Final Award of Arbitrators, Regarding Remedies, dated Apr. 7, 2011 (the "Third and Final Award") at 1)

### A.   Second Interim Award

On December 7, 2010, in its Second Interim Award, the arbitration panel made the following findings:

- The November Letter Award supplements rather than replaces the exclusivity provisions in the distribution agreements, such that Hornell is still "permitted to sell all products to BJ's, Costco, Wal-Mart, Caldor and Sam's Club in [Canada Dry Potomac's] territory."  (Second Interim Award at 5)

- "Hornell violated the terms of the parties' agreements by indirectly selling 20 ounce PET bottles to Exxon Mobil and by directly selling 16 ounce PET bottles to Sam's Club, Costco, and BJ's in [Canada Dry Delaware's] territory."  (Id. at 6)

- Canada Dry did "not establish[] that Hornell breached the parties' agreements by making direct or indirect sales to Wegman's, Salad Works, Big Lots, Family Dollar, or Dollar General."  (Id.)  Canada Dry "provided no evidence that Hornell made or is otherwise responsible for sales to Wegman's [or] . . . to Salad Works. . . .  (Id. at 7) Canada Dry's "eleventh hour attempt to insert sales of [AriZona products] to Big Lots, Family Dollar and General Dollar into the proceeding, where [Canada Dry] neither included allegations regarding such sales in their Supplemental Demand nor questioned any witnesses about these sales, is inappropriate. . . ."  (Id. at 7-8)

- "Nothing in the parties' agreements permits Hornell to unilaterally dictate the price at which [Canada Dry] must sell AriZona product[s]. . . .  [Canada Dry is] entitled to set the price at which [it] sell[s] covered products, within reasonable commercial limits . . . ."  (Id. at 6-7)

---

[1]  Canada Dry first raised these claims in a motion to compel Hornell to comply with the Consent Award.  Magistrate Judge Ellis denied the motion, holding that Canada Dry had raised new claims arising under the exclusivity provisions of the parties' distribution agreements and not under the Consent Award, and therefore the proper forum for resolving these new claims was arbitration.  Canada Dry, 2009 WL 890097, at *7, *9.

- "Hornell breached the parties' agreements by refusing to sell 16 and 20 ounce PET bottles to [Canada Dry] on an exclusive basis. . . . [Canada Dry] ha[s] also established that [it] . . . placed an order with Hornell for 16 ounce and 20 ounce PET bottles, which Hornell refused to fill because [Canada Dry] would not commit to selling the product at the prices demanded by Hornell." (Id. at 8)

### B.    Third and Final Award

On April 7, 2011, the panel issued its Third and Final Award regarding Canada Dry's request for declaratory relief, money damages, and injunctive relief. (Third and Final Award)

### 1.    Declaratory Relief

Canada Dry sought a declaration that:

(i)    "Hornell may not distribute Exclusive Products to club stores in [Canada Dry Delaware's] territories other than in 16 ounce glass bottles or 15.5 ounce cans;"

(ii)    Canada Dry has "the right to distribute all available 16 and 20 ounce PET packages on an exclusive basis upon the terms and conditions applicable to other Exclusive Products;"

(iii)    Canada Dry has "the right to set any commercially reasonable price for Exclusive Products;" and

(iv)    "Hornell may not condition [Canada Dry's] right to sell any existing Exclusive Products or new AriZona product, package or flavor on an exclusive basis upon their selling those products at prices set or suggested by Hornell."

(Id. at 1) Canada Dry argued in its post-hearing brief that "[t]he [p]anel's declaratory award should not be limited . . . to the specific breaches Hornell committed." (Wolfson Decl. (Dkt. No. 27), Ex. G at 2)[2]

---

[2] Canada Dry has moved to exclude the declarations of Howard S. Wolfson and John Welsh, which were submitted by Hornell in opposition to Canada Dry's motion to enforce the judgment. (Dkt. No. 25) Canada Dry argues that the declarations should be excluded because they are "replete with conclusory and argumentative assertions, infected with hearsay assertions[,] and grounded in statements regarding matters about which the witnesses lack personal knowledge."

The panel's Third and Final Award provides for the following declaratory relief, which is "limited in scope to the issues brought and litigated in the instant proceeding":

> [Canada Dry is] contractually authorized to distribute 16-ounce and/or 20-ounce PET bottles of AriZona non-alcoholic beverage products on an exclusive basis in [Canada Dry's] territories, except as set forth in Schedules A-2 of the Distributor Agreements and Paragraph 3 of the November Letter Agreement, which paragraph supplements and does not replace such Schedules A-2, and unless and until such products become Non-Exclusive pursuant to the terms of the Distributor Agreements. [Canada Dry] may, "within reasonable commercial limits," set the prices at which [it] sell[s] 16-ounce and 20-ounce PET bottles of AriZona non-alcoholic beverages, as previously determined and circumscribed by the Second Interim Award.

(Third and Final Award at 1-2)

### 2.   **Money Damages**

Canada Dry sought money damages for Hornell's refusal to sell 20-ounce PET bottles to Canada Dry on an exclusive basis. (Id. at 2) The panel awarded Canada Dry only nominal damages, however, finding that its claim for lost profits was speculative. (Id.) In particular, the panel rejected a damages model based on the assumption that customers who had purchased lower priced AriZona products would have purchased more expensive 20-ounce PET bottles instead, had they been available. (Id.)

---

(Canada Dry Exclude Br. (Dkt. No. 26) at 1) "Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." Pharmacy, Inc. v. Am. Pharm. Partners, Inc., No. 05 Civ. 776 (DRH) (AKT), 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007). There is much in the Wolfson and Welsh declarations that is conclusory and argumentative and "more appropriate for a memorandum of law than an affidavit." Id. The Court has given no weight to those portions of the declarations that present hearsay or legal argument and conclusions rather than facts. Accordingly, Canada Dry has suffered no prejudice from these declarations. The Court "will review the documentary and [testamentary] evidence and draw its conclusions from the documents and [transcripts] submitted, not [the declarants'] characterizations of [this material]." Id.; see also New York v. Solvent Chem. Co., 225 F. Supp. 2d 270, 278 (W.D.N.Y. 2002) (same). Accordingly, Canada Dry's motion to exclude the Wolfson and Welsh declarations will be denied.

Canada Dry also sought money damages for Hornell's direct sale of 16-ounce PET bottles to Sam's Club, Costco, and BJ's in Canada Dry Delaware's territory.  (Id.)  Canada Dry argued that it "would not have permitted Hornell to infringe upon its exclusivity rights in this manner without demanding compensation in the form of a per-case fee."  (Id.)  The panel again awarded Canada Dry only nominal damages, finding that it had not sustained its burden of establishing that (1) "Hornell would have agreed to a per-case $1.50 fee . . . as opposed to simply electing not to sell the product to the Club Stores," and (2) that Canada Dry Delaware "would have sold the 16 ounce PET product to the Club Stores if Hornell had not done so itself. . . ." (Id. at 3)  The panel's decision "notes that the inferences and assumptions . . . justif[ying] an award in any amount, no matter how characterized, would constitute . . . an unproved damages formula that would practically function as an amendment to the [parties'] agreement."  (Id.)

### 3.    Injunctive Relief

The Third and Final Award does not address in any fashion Canada Dry's request for injunctive relief.  Canada Dry explicitly requested such relief before, during, and after the arbitration hearings.

In its Supplemental Demand for Arbitration, dated February 16, 2010, Canada Dry requests, inter alia, (1) "an order prohibiting Hornell from directly selling" AriZona products other than as specified in the parties' distribution agreements, and (2) "[a]n injunction ordering Hornell to sell 16 and 20 ounce bottles" of AriZona products to Canada Dry consistent with the terms of the distribution agreements.  (Wolfson Decl., Ex. B at 27, 29)

During his closing argument at the arbitration panel's hearing on remedies, Canada Dry's counsel reiterated a request for injunctive relief, stating:

> I would like to again highlight to the panel that not only is the issue of the amount of damages and the amount that should be awarded to the claimants, but also the nature of the relief in terms of injunctive and declaratory relief. . . . So we are asking that the panel by the issuance of an injunction or a declaratory relief implement its rulings as to where there were breaches.

(Wolfson Decl., Ex. F at 1936, 1938; see also id. at 1940-41 (requesting "an injunction or a declaratory judgment" with respect to products Hornell may sell and Canada Dry's ability to set prices))

Finally, after the remedies hearing, Canada Dry argued in its post-hearing brief that it was "entitled to injunctive and declaratory relief."  (Wolfson Decl., Ex. G at 1)

In sum, Canada Dry's request for injunctive relief was presented to the arbitration panel at several points during the arbitration proceedings, but the Third and Final Award does not address injunctive relief.

### C.    Confirmation of the Award

On June 24, 2011, Canada Dry filed a petition with this Court to confirm the Third and Final Award.  (Dkt. No. 1)  Finding that the arbitrators had given cogent reasons for their determinations, and that there was no evidence that they had exceeded their authority or otherwise acted in a manner that was contrary to law, this Court granted the petition on April 30, 2012.  (Dkt. No. 14)  Judgment was entered on May 1, 2012.  (Dkt. No. 15)

## IV.    THE PARTIES' POST-JUDGMENT DISPUTES

On November 26, 2012, Canada Dry filed a motion to enforce this Court's May 1, 2012 judgment (the "Judgment").  (Dkt. No. 18)  Canada Dry argues that Hornell is violating the Third and Final Award – and  the Judgment that confirmed it – by (1) selling 16-ounce PET bottles of AriZona products to Sam's Club, Costco, and BJ's club stores in Canada Dry Delaware's territory; (2) selling 16-ounce PET bottles of AriZona products to Wegman's, Food

Basics, Shop-Rite, SuperFresh, Giant, Pathmark, and Target in Canada Dry Delaware and

Canada Dry Potomac's territories; and (3) refusing to allow Canada Dry to supply 16-ounce PET

bottles of AriZona products to club stores in Canada Dry Delaware's territory unless it does so at

prices specified by Hornell.[3]  (Canada Dry Br. (Dkt. No. 19) at 11)

Canada Dry seeks the following relief:

(i)     an injunction "prohibiting Hornell from directly or indirectly supplying AriZona brand beverages in 16 or 20 ounce PET bottles within the Canada Dry Parties' territories other than to . . . club stores in [Canada Dry Potomac's] territory. . . ." as specified in Canada Dry Potomac's distribution agreement;

(ii)    an order requiring Hornell to (1) submit proof of compliance with the Judgment, including providing copies of correspondence from Hornell advising stores that Hornell will no longer be supplying AriZona brand beverages in 16-ounce PET bottles, and (2) making a witness available for deposition on the compliance issue;

(iii)   money damages in order to "induce future compliance" and "compensate the Canada Dry Parties[] for Hornell's existing violations";[4]

(iv)    an order requiring Hornell to provide an accounting of sales it has made in violation of the distribution agreements; and

(v)     "reasonable attorneys' fees incurred in obtaining the relief requested. . . ."

(Id. at 21-22, 24)

---

[3] Canada Dry has filed a motion for leave to file a supplemental brief concerning additional breaches of the distribution agreements committed by Hornell since the instant motion to enforce was briefed.  (Dkt. No. 39)  The new alleged breaches concern Hornell's failure to honor Canada Dry's exclusive distribution rights with respect to a new 6pk/16 ounce glass bottle package. (Canada Dry Supp. Br. (Dkt. No. 40) at 3)  Allegations regarding Hornell's distribution of this product have not been submitted to arbitration and are irrelevant to this Court's determination of whether Hornell violated the Judgment with regard to 16-ounce PET bottles.  Accordingly, Canada Dry's motion for leave to file a supplemental brief will be denied.

[4] Canada Dry seeks "70 cents per case of 12 pack, 16 ounce PET bottles Hornell sold to supermarkets and other retailers and $1.40 per case of 24 pack, 16 ounce PET bottles sold to club stores since April 7, 2011, the date the declaratory judgment was entered."  (Canada Dry Br. at 22)

## DISCUSSION

### I.   LEGAL STANDARD

"'As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees.'" Zeiler v. Deitsch, 500 F.3d 157, 170 (2d Cir. 2007) (quoting Dulce v. Dulce, 233 F.3d 143, 146 (2d Cir. 2000)).  Such ancillary jurisdiction includes the power to enforce a judgment confirming an arbitration award.  Under the Federal Arbitration Act, such a judgment has "the same force and effect, in all respects, as, and [is] subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."  9 U.S.C. § 13.  "Once confirmed, [an arbitration] award[] become[s] [an] enforceable court order[], and, when asked to enforce such orders, a court is entitled to require actions to achieve compliance with them."  Zeiler, 500 F.3d at 170 (where arbitration awards called for accountings, district court did not impermissibly enlarge scope of awards by requiring an accounting up to the date of the enforcement order, rather than the date of the last arbitration award).

Nevertheless, "[i]n the context of an arbitration, the judgment to be enforced encompasses the terms of the confirmed arbitration awards and may not enlarge upon those terms." Id. (emphasis added).  "Accordingly, the scope of a court's power to enforce the judgment only extends to the subject matter covered by the judgment, and 'when a petition for enforcement [of an arbitration award] involves a new dispute . . . enforcement must be denied.'" Canada Dry, 2009 WL 890097, at *7 (denying motion to enforce exclusivity provisions in distribution agreements where confirmed arbitration award did not incorporate the distribution

agreements) (quoting <u>Hellman v. Program Printing, Inc.</u>, 400 F. Supp. 915, 918 (S.D.N.Y. 1975)).  "'Unless "it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion," the case must go to fresh arbitration rather than to the court for judicial enforcement.'"  <u>Id.</u> (quoting <u>Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.</u>, 774 F.2d 43, 46 (2d Cir. 1986) (quoting <u>Derwin v. Gen. Dynamics Corp.</u>, 719 F.2d 484, 491 (1st Cir. 1983))).

Canada Dry bears the burden of proving by a preponderance of evidence that Hornell violated the Judgment.  <u>See</u> <u>United States v. Visa U.S.A., Inc.</u>, No. 98 Civ. 7076 (BSJ), 2007 WL 1741885, at *4 (S.D.N.Y. June 15, 2007) ("MasterCard must demonstrate . . . by a preponderance of the evidence that Visa . . . violate[d] the Final Judgment."); <u>New York v. Primestar Partners, L.P.</u>, No. 93 Civ. 3868 (JES), 1993 WL 720677, at *12 (S.D.N.Y. Sept. 14, 1993) ("The states shall bear the burden of proving a violation of this Final Judgment by a preponderance of the evidence.").

## II.   <u>ANALYSIS</u>

### A.   <u>Alleged Violations of Judgment</u>

#### 1.   <u>Hornell's Distribution of 16-Ounce PET Bottles to Club Stores in Canada Dry Delaware's Territory</u>

The Third and Final Award provides that Canada Dry is

contractually authorized to distribute 16-ounce . . . PET bottles of AriZona non-alcoholic beverage products on an exclusive basis in [Canada Dry's] territories, except as set forth in Schedules A-2 of the Distributor Agreements and Paragraph 3 of the November Letter Agreement, which paragraph supplements and does not replace such Schedules A-2, and unless and until such products become Non-Exclusive pursuant to the terms of the Distributor Agreements.

(Third and Final Award at 1-2)  Schedule A-2 and the November Letter Agreement permit Hornell to distribute 16 ounce <u>glass</u> bottles to club stores in Canada Dry Delaware's territory, but those carve-outs do not permit Hornell to distribute 16 ounce PET bottles.  (NJ/DE Agreement at 38, PA Agreement at 38; Second Interim Award at 5).  Accordingly, Hornell's distribution of 16-ounce PET bottles to Sam's Club, Costco, and BJ's in Canada Dry Delaware's territory would violate the Judgment.[5]

However, Canada Dry has not met its burden of proving by a preponderance of the evidence that Hornell has in fact distributed 16-ounce PET bottles to Sam's Club, Costco, and BJ's in Canada Dry Delaware's territory.  In support of its motion, Canada Dry has submitted a declaration from Charles B. Warner, an investigator who surveyed club stores in New Jersey and Pennsylvania in September 2011, October 2011, and July 2012 to determine whether they were selling AriZona beverages in 16-ounce containers.  (Warner Decl. (Dkt. No. 20) ¶¶ 1-2, 10-14, 18, 26-27, 29, 31, 33-34)  Warner's declaration, and the photographs attached as exhibits to his declaration, demonstrate that these stores were selling AriZona beverages in 16-ounce containers, but it is not possible to determine from these materials whether the bottles at issue are made out of PET – which Hornell is not permitted to distribute – or glass – which Hornell is permitted to distribute.  Canada Dry's submissions likewise do not establish that Hornell is responsible for distributing these products to the club stores.  Accordingly, Canada Dry has not met its burden of establishing that Hornell has violated the Judgment by distributing 16-ounce PET bottles to Sam's Club, Costco, and BJ's in Canada Dry Delaware's territory.

---

[5]  To the extent that Hornell suggests that 16-ounce PET bottles have become non-exclusive as a result of Canada Dry's (1) refusal to distribute AriZona products at commercially reasonable prices; (2) failure to order the initial minimum order of 16-ounce PET bottles required by the distribution agreements; or (3) failure to diligently and aggressively market and distribute 16-ounce PET bottles in its territories (see Hornell Br. (Dkt. No. 30) 14-15, 24), any such claim has not been submitted to arbitration (see id. at 24), and therefore cannot be considered here.

####    2.       Hornell's Distribution of 16-Ounce
####                PET Bottles to Supermarkets and Target

As discussed above, the Third and Final Award  provides that Canada Dry is

contractually authorized to distribute 16-ounce . . . PET bottles of AriZona non-
alcoholic beverage products on an exclusive basis in [Canada Dry's] territories,
except as set forth in Schedules A-2 of the Distributor Agreements and Paragraph
3 of the November Letter Agreement, which paragraph supplements and does not
replace such Schedules A-2, and unless and until such products become Non-
Exclusive pursuant to the terms of the Distributor Agreements.

(Third and Final Award at 1-2)  Schedule A-2 of Canada Dry Delaware's distribution agreements

does not authorize Hornell to distribute 16-ounce bottles of any kind to supermarkets, and

authorizes Hornell to sell only <u>glass</u> bottles to Target.  (NJ/DE Agreement at 38, PA Agreement

at 38)  Schedule A-2 of Canada Dry Potomac's distribution agreement does not authorize

Hornell to distribute 16 ounce bottles of any kind to any store.[6]  (Potomac Agreement at 23)

Similarly, the November Letter Agreement does not pertain to Target and, in any event,

addresses only products of 12-ounces or less and products greater than one liter.  (Second Interim

Award at 5)  Accordingly, Hornell has no right to distribute 16-ounce PET bottles to

supermarkets or to Target, and any such conduct would violate the Judgment.

Hornell argues, however, that any sales of 16-ounce PET bottles that it may have

made to ShopRite, Food Basics, Giant, Pathmark, SuperFresh, and Target are outside the scope

of the arbitration award and Judgment, because the arbitration panel did not address claims

regarding these specific stores.  (Hornell Br. 16-17)  This narrow reading of the arbitration award

is not persuasive.  The arbitration panel expressly considered and upheld Canada Dry's exclusive

right to distribute 16-ounce PET bottles.  The declaration is limited only by the carve-outs in

Schedule A-2 and the November Letter Agreement, which do not permit Hornell to distribute 16-

---

[6]  Schedule A-1 of Canada Dry Potomac's distribution agreement does not permit Hornell to
distribute any Exclusive Products to Target.  (Potomac Agreement at 22)

ounce PET bottles to supermarkets or to Target.  Accordingly, any distribution by Hornell of 16-ounce PET bottles to these stores would violate the Judgment.[7]

In support of its motion, Canada Dry has submitted a declaration from John Taglienti, its Vice President for Sales and Marketing.  (Taglienti Decl. ¶ 1)  Taglienti states that "after the relief hearings concluded and the Panel entered its declaratory relief, Hornell resumed supplying Food Basics [with 12pk/16oz. PET bottles] and started selling to other retailers. . . ." (Id. ¶ 42; see also id. ¶ 39 (listing other stores that Hornell supplied))  Taglienti further states that he has "personal knowledge that Hornell supplies these retail chains because [he] saw the 12pk/16oz PET configuration stocked in stores operated by these chains in [Canada Dry's] territories."  (Id. ¶ 43)  "When [Taglienti] complained to Mr. Welsh [– the Mid-Atlantic Regional Sales Manager for AriZona Beverages USA LLC –] he acknowledged that Hornell was directly supplying these accounts. . . ."  (Id.; Welsh Decl. (Dkt. No. 29) ¶ 1)

This Court concludes that Canada Dry has met its burden of proving by a preponderance of the evidence that Hornell has distributed 16-ounce PET bottles to supermarkets and Target, in violation of the arbitral award and this Court's Judgment.

### 3.    Hornell's Price Restrictions Concerning Canada Dry's Sale of 16-Ounce PET Bottles to Club Stores

The arbitration panel declared that "[Canada Dry] may, 'within reasonable commercial limits,' set the prices at which [it] sell[s] 16-ounce and 20-ounce PET bottles of AriZona non-alcoholic beverages, as previously determined and circumscribed by the Second Interim Award."  (Third and Final Award at 2)  The Second Interim Award states:  "Nothing in

---

[7]  As noted in the discussion concerning club stores, this Court will not consider any suggestion by Hornell that its distribution of 16-ounce PET bottles to ShopRite, Food Basics, Giant, Pathmark, SuperFresh, and Target is justified because these products have become non-exclusive as a result of Canada Dry's marketing failures.  (See Hornell Br. 14-15, 24)  Any such claim has not been submitted to arbitration (see id. at 24), and therefore cannot be considered here.

the parties' agreements permits Hornell to unilaterally dictate the price at which [Canada Dry] must sell AriZona product[s]. . . .  [Canada Dry is] entitled to set the price at which [it] sell[s] covered products, within reasonable commercial limits. . . ."  (Second Interim Award at 6-7) Accordingly, any attempt by Hornell to limit Canada Dry's ability to set reasonable commercial prices for the products it distributes would violate the Judgment.

   The record here demonstrates that Hornell has violated the Judgment by attempting to dictate the prices at which Canada Dry Delaware sells AriZona products to club stores.  In his declaration, Taglienti states that "Welsh stated that Hornell would not permit [Canada Dry Delaware] to distribute the 24pk/16oz. configuration [to] club stores unless [Canada Dry] agreed to sell it to club[] stores for $9.83 a case[,] . . . [which is] a price at which [Canada Dry Delaware] would barely be able to cover its own expenses. . . ."  (Taglienti Decl. ¶ 36)

   An August 19, 2011 letter from Welsh to Taglienti confirms that Hornell has – since the Third and Final Award was issued – attempted to set the price for Canada Dry Delaware's sales of 16-ounce PET bottles to club stores.  In his letter, Welsh states:  "We offered [Canada Dry Delaware] the opportunity to buy the [16 oz. PET (24 pack)] product[s] at $10.90 with a $2.00 bill back and sell it for $9.83, resulting in a per pallet profit of $50.22. . . .   You rejected this proposal."  (Welsh Decl., Ex. C at 3; see also id. ¶ 19 (describing same pricing plan); Vultaggio Decl. (Dkt. No. 28) ¶ 26 ("[S]ubsequent to the arbitration [Canada Dry Delaware] has rejected all efforts by Hornell to discuss pricing structure under which [Canada Dry Delaware] will sell 16 oz PET [bottles] to . . . Club Store outlets . . . in its territory. . . ."))

The evidence demonstrates that Hornell has interfered with Canada Dry's right to set the price at which it sells 16-ounce PET bottles, and that it has therefore violated the Third and Final Award and this Court's Judgment.[8]

**B.      Remedies**

**1.      Injunctive Relief**

Canada Dry seeks, inter alia, an injunction prohibiting Hornell from (1) distributing 16-ounce PET bottles of AriZona products to supermarkets and Target stores in the exclusive distribution territories of Canada Dry Delaware and Canada Dry Potomac; and (2) setting prices at which Canada Dry Delaware must sell 16-ounce PET bottles of AriZona products to club stores in Canada Dry Delaware's exclusive territory.[9]

Injunctive relief is appropriate here.  The Judgment entered by this Court is in the nature of a declaratory judgment, because it confirms a declaratory award issued by an arbitration panel.  It is well established that "[a] declaratory judgment can . . . be used as a predicate to further relief, including an injunction."  Powell v. McCormack, 395 U.S. 486, 499 (1969) (citing 28 U.S.C. § 2202); see also Starter Corp. v. Converse, Inc., 170 F.3d 286, 298 (2d Cir. 1999) ("plaintiffs who have won a declaratory judgment from the court [are entitled] to enforce that judgment through injunction, damages and other relief") (citing Vt. Structural Slate Co. v. Tatko Bros. Slate Co., 253 F.2d 29, 29-30 (2d Cir. 1958) (per curiam) ("There was ample

---

[8]  The arbitration panel was not asked to consider or rule on what are "commercially reasonable limits."  Accordingly, to the extent that Hornell seeks to argue that the prices set by Canada Dry are not within "commercially reasonable limits," it must take that issue to arbitration.  (See Hornell Br. 24; Welsh Decl. ¶ 19 & Ex. C at 3; Vultaggio Decl. ¶ 26)

[9]  Canada Dry also requests an injunction prohibiting Hornell from distributing 20-ounce PET bottles in its exclusive territories.  (Canada Dry Br. 21)  Canada Dry has not offered any evidence that Hornell is distributing 20-ounce PET bottles in violation of the Judgment, however.  Accordingly, Canada Dry is not entitled to an injunction regarding 20-ounce PET bottles.

residual power in the court to issue this permanent injunction, even though the original decree

contained no such provision.") (granting permanent injunction prohibiting defendant from

claiming that patent ruled invalid was nonetheless valid)).  Accordingly, an injunction is

appropriate here to the extent that Canada Dry has shown that Hornell has violated the

declaratory award issued by the arbitration panel and confirmed by this Court.

Hornell argues that injunctive relief is not appropriate, because it would

impermissibly expand the scope of the arbitral award, given that Canada Dry sought – but did

not obtain – injunctive relief from the panel.  (See Hornell Br. 16-17)  Hornell cites no law in

support of this argument, which would – in effect – render the arbitration panel's declaratory

ruling a nullity.  As the Second Circuit has stated, "enforcement is not confirmation.  Once

confirmed, [arbitral] awards become enforceable court orders, and, when asked to enforce such

orders, a court is entitled to require actions to achieve compliance with them."  Zeiler, 500 F.3d

at 170.

Here, the confirmed arbitral award declares Canada Dry's rights with respect to

setting the price for and distributing 16-ounce PET bottles to club stores, supermarkets, and

Target stores, and an injunction prohibiting Hornell from interfering with those rights merely

requires compliance with rulings already made by the arbitration panel and confirmed by this

Court.

Hornell further argues that the doctrine of res judicata prohibits Canada Dry from

seeking injunctive relief, because Canada Dry requested but was not granted injunctive relief

during the arbitration.  (Hornell Br. 18-21)  This doctrine is inapplicable here.  "The principle of

res judicata bars the relitigation of any ground of recovery that was available in the prior action,

whether or not it was actually litigated."  Pa. Eng'g Corp. v. Islip Res. Recovery Agency, 710 F.

Supp. 456, 462 (E.D.N.Y. 1989).  Here, Canada Dry does not seek to relitigate the basis for its

recovery.  To the contrary, it seeks enforcement of the relief it obtained in the arbitration

proceeding.  While the doctrine of <u>res judicata</u> "prevents [Hornell] from raising any new defense

to defeat the enforcement of [the] earlier [determination by the arbitration panel]," <u>United States</u>

<u>v. DiPaolo</u>, 466 F. Supp. 2d 476, 485 (S.D.N.Y. 2006), it does not preclude Canada Dry from

obtaining an injunction designed to ensure compliance with the arbitral award confirmed by this

Court.

   Finally, Hornell argues that Canada Dry has not satisfied the requisite elements

for issuance of a preliminary injunction.  (Hornell Br. 22)  The elements cited by Hornell –

including a likelihood of success on the merits – are not applicable here, given that Canada Dry

has already obtained a judgment in its favor.  "[T]here is little question but that this [C]ourt has

the inherent power to grant [an] injunction in this type [of] case and give some protection to

[Canada Dry] outside of [a] hollow declaration. . . ."  <u>Vt. Structural Slate Co. v. Tatko Bros.</u>

<u>Slate Co., Inc.</u>, 149 F. Supp. 139, 140 (N.D.N.Y. 1957), <u>aff'd</u>, 253 F.2d 29 (granting permanent

injunction to enforce prior declaratory judgment without considering traditional elements such as

existence of irreparable injury, non-compensable injury, balance of hardships, and public

interest).

  **2.**  <u>**Damages**</u>

   Canada Dry seeks monetary damages in the form of a fee for each case of 16-

ounce PET bottles that Hornell sold in violation of the Judgment.  (Canada Dry Br. 22)  Canada

Dry argues that damages should be awarded even though the arbitration panel expressly rejected

its request for damages, finding the claim speculative.  (<u>Id.</u> at 22-23)

The Court concludes that a damages award is not appropriate.  Canada Dry is proceeding on the same lost profits damages model that was explicitly rejected by the arbitration panel.  "To be sure, once a court has confirmed an award, it has plenary authority 'over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees,' including by exercising authority over proceedings to enforce the judgment."  Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council, No. 12-0402-cv, 2013 WL 1693951, at *4 (2d Cir. Apr. 19, 2013) (summary order) (quoting Zeiler, 500 F.3d at 170).  "But this enforcement power does not extend beyond the scope of the arbitration award:  'the judgment to be enforced encompasses the terms of the confirmed arbitration award[ ] and may not enlarge upon those terms.'"  Id. (quoting Zeiler, 500 F.3d at 170).  Here, permitting Canada Dry to recover damages on a theory explicitly rejected by the arbitration panel[10] would extend "the scope of the arbitration award  . . . beyond the terms of the confirmed arbitration award."[11]  Id.

### 3.    Proof of Compliance

Canada Dry asks the Court to order Hornell to submit proof of compliance with the Judgment, including (1) correspondence from Hornell to stores that it has been improperly supplying with 16-ounce PET bottles, advising them that it will no longer do so, and (2) deposition testimony.  (Canada Dry Br. 21)  Such "proof of compliance does not affect the merits of the dispute, would advance the arbitrators' intent to stop future violations of the [distribution agreements], and furthermore, promotes justice in ensuring that respondent complies with this

[10]  In rejecting Canada Dry's lost profits damages model, the panel stated that accepting this "unproved damages formula" would have the practical effect of amending the parties' agreement.  (Third and Final Award at 3)
[11]  Although Canada Dry has requested that Hornell be required to provide an accounting of its sales to club stores, supermarkets, and Target (Canada Dry Br. 24), there is no reason to believe that such an accounting would enable Canada Dry to cure the defects in its damages model cited by the arbitration panel.

Court's judgment." Ermenegildo Zegna Corp. v. Lanificio Mario Zegna, S.p.A., No. 02 Civ. 3511 (HB), 2003 WL 21709424, at *2 (S.D.N.Y. July 22, 2003) (citing New York v. Shore Realty Corp., 763 F.2d 49, 53 (2d Cir. 1985) ("[W]e see no reason why a court must await the formal initiation of contempt proceedings to order discovery concerning a party's ability to comply with orders issued but not carried out, at least when ability has been put in issue.")). Accordingly, Hornell will be required to produce proof of compliance with the Judgment previously issued by this Court.

### 4.    Attorneys' Fees and Costs

Canada Dry requests an award of "reasonable attorneys' fees incurred in obtaining the relief requested [in its motion] to ensure Hornell's compliance with the Judgment." (Canada Dry Br. 24)

"[E]ven though the so-called 'American Rule' prohibits fee shifting in most cases . . . a court may assess attorney's fees as a sanction for the willful disobedience of a court order [or] . . . when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (internal quotations and citations omitted). "An equity court has the unquestioned power to award attorney's fees against a party who shows bad faith by . . . hampering enforcement of a court order. The award vindicates judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy." Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978) (citations omitted). "As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." Int'l Chem. Workers Union, 774 F.2d at 47 (internal quotation

omitted).  "[C]ourts have routinely awarded attorneys fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court."  Abondolo v. H. & M. S. Meat Corp., No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases).

Here, the Court finds that Hornell acted in bad faith by distributing 16-ounce PET bottles to supermarkets and Target stores in Canada Dry's exclusive territories, and by attempting to set the prices at which Canada Dry could sell AriZona products to club stores in its exclusive territories, after confirmation of the arbitral award.  The arbitration panel's declaratory award plainly prohibits such conduct.

Accordingly, Canada Dry is entitled to an award reflecting the reasonable attorneys' fees and costs it incurred in bringing its motion to enforce the Judgment.

## CONCLUSION

Canada Dry's motion to enforce the Judgment (Dkt. No. 18) is granted in part and denied in part as set forth above.

Hornell is enjoined from:

(1)  distributing, directly or indirectly, 16-ounce PET bottles of AriZona products to supermarkets and Target stores in Canada Dry Delaware and Canada Dry Potomac's exclusive distribution territories; and

(2)  setting prices at which Canada Dry Delaware must sell 16-ounce PET bottles of AriZona products to club stores in Canada Dry Delaware's exclusive territory, or conditioning its supply of AriZona products to Canada Dry Delaware on Canada Dry Delaware's agreement to sell these products at a particular price.

Canada Dry will make a submission by October 7, 2013, setting out, with specificity, what document and deposition discovery should be ordered concerning Hornell's compliance with this Court's Judgment regarding the distribution of 16 ounce PET bottles. Hornell will file any responsive papers by October 14, 2013.

Hornell is hereby ordered to pay Canada Dry's reasonable attorneys' fees and costs incurred in bringing its motion to enforce the Judgment. Canada Dry will make a submission by October 7, 2013 supporting its request for attorneys' fees and costs. Hornell will file any opposition by October 14, 2013.

Canada Dry's motion to exclude the declarations of Howard S. Wolfson and John Welsh is denied. (Dkt. No. 25) Canada Dry's motion for leave to file a supplemental brief is also denied. (Dkt. No. 39)

The Clerk of Court is respectfully requested to terminate the motions (Dkt. No. 18, 25, 39).

Dated: New York, New York
       September 30, 2013

SO ORDERED.

Paul G. Gardephe
United States District Judge