UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/25/13
```

CANADA DRY DELAWARE
VALLEY BOTTLING COMPANY,
AND CANADA DRY POTOMAC CORP.,

                Petitioners,

v.

HORNELL BREWING CO., INC.,

                Respondent.

**MEMORANDUM**
**OPINION & ORDER**

11 Civ. 4308 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In a September 30, 2013 Memorandum Opinion and Order (the "Order"), this Court granted in part Petitioners' motion to enforce this Court's May 1, 2012 judgment (Dkt. No. 15), finding that Respondent Hornell Brewing Co., Inc., had violated the Judgment by (1) selling certain AriZona iced tea products to supermarkets and Target stores in Canada Dry's exclusive distribution areas; and (2) refusing to honor Canada Dry's exclusive distribution rights unless Canada Dry agreed to sell AriZona products at prices set by Hornell. Canada Dry Del. Valley Bottling Co. v. Hornell Brewing Co., Inc., No. 11 Civ. 4308 (PGG), 2013 WL 5434623 (S.D.N.Y. Sept. 30, 2013) (Dkt No. 46).[1] This Court further held that Petitioners were entitled to the "reasonable attorneys' fees and costs incurred in bringing [their] motion to enforce," and ordered Hornell to submit proof of compliance with the Judgment, in the form of documents and deposition testimony. Id. at *11, *13. The Order directed Petitioners to make submissions supporting their request for attorneys' fees, and "setting out, with specificity, what documents and deposition discovery should be ordered concerning Hornell's compliance with this Court's

---

[1] Familiarity with the Order is assumed.

Judgment." Id. at *12-13. Both sides have submitted briefing concerning these issues, which are resolved as set forth below.

## DISCUSSION

### I.   ATTORNEYS' FEE AWARD

Petitioners seek an attorneys' fee award in the amount of $139,478.00. (Wise Aff. (Dkt. No. 49) ¶ 4) The proposed attorneys' fee award reflects the work of six Cozen attorneys and a paralegal on the motion to enforce, and the work of three Cozen attorneys, a paralegal, and a library assistant on the fee application. (Id. ¶¶ 11, 45)

#### A.   Legal Standard

"'Both the evaluation of reasonable attorneys' fees and the reduction of such fees lies within the sound discretion of the Court.'" Amaprop Ltd. v. Indiabulls Fin. Srvs. Ltd., No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *4 (S.D.N.Y. Mar. 16, 2011) (quoting ACE Ltd. v. CIGNA Corp., No. 00 Civ. 9423 (WK), 2001 WL 1286247, at *2 (S.D.N.Y. Oct. 22, 2001) (citing Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001))); see also Suchodolski Assocs., Inc. v. Cardell Fin. Corp., Nos. 03 Civ. 4148(WHP), 04 Civ. 5732(WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (citing Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996)). The starting point for an award of attorneys' fees is the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008). This "initial estimate" is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

"In determining a reasonable rate, a court 'may rely on its own knowledge of comparable rates charged by lawyers in the district.'" Merck Eprova AG v. Brookstone Pharm.,

2

LLC, No. 09 Civ. 9684 (RJS), 2013 WL 3146768, at *1 (S.D.N.Y. June 10, 2013) (quoting Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)). In exercising its discretion, the Court must "bear in mind all of the case-specific variables that . . . courts have identified as relevant," including "[t]he reasonable hourly rate . . . a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190 (emphasis in original). Courts also consider "the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively . . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Id. at 184.

"Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiff[']s success in the litigation." Robinson v. City of N.Y., No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009). Work on ultimately unsuccessful claims is compensable as long as those claims are not "wholly unrelated" to the claims the plaintiff succeeded on at trial. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (quoting Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992)). A downward adjustment may still be appropriate, however, when a plaintiff "succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434. Where the lines become blurry, a court need not "'become enmeshed in a meticulous analysis of every detailed facet of the professional representation'" to determine the proper award, Seigal v. Merrick, 619 F.2d 160, 165 n.8 (2d Cir. 1980) (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)), nor should "[a] request for attorney's fees . . . result in a second major

3

litigation." Hensley, 461 U.S. at 437. The party seeking an attorneys' fee award must demonstrate the reasonableness of the hours spent and rates asserted. See id.

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday, 42 F.3d at 134.

### B. Hourly Rates

Attorneys in the Philadelphia and New York offices of Cozen O'Connor, L.P. represent Petitioners in this litigation, and also represented Petitioners in a previous, related arbitration. (Wise Aff. (Dkt. 49) ¶¶ 5, 7 and Ex. A) In connection with the motion to enforce, Petitioners seek $139,478.00 in fees for the work of six Cozen attorneys – Stephen Cozen, Robert Hayes, John McDonough, Peter Ryan, Tamar S. Wise, and Matthew Bleich – and paralegal Eleonora Gomez. (Id. ¶¶ 4, 11) In connection with their fee application, Petitioners seek $7,881.50 in fees for the work of Cozen attorneys Robert Hayes, Tamar S. Wise, and Kristy Miller, paralegal Veronica Rusu, and library assistant Erika Santiago. (Id. ¶ 45 and Ex. B)

As explained below, the Court concludes that fees are recoverable only for the work of the lead partner, the lead associate, and a paralegal. At the partner level, Robert Hayes is responsible for the vast majority of hours billed. Hayes is assigned to Cozen's Philadelphia office, and his billing rate is $575-$600 per hour. Hayes has been a member of the bar for approximately thirty years and is a highly experienced litigator and trial lawyer. (Id. ¶ 15-17, 31 and Ex. A) Tamar S. Wise billed the vast majority of associate hours. She is assigned to Cozen's New York office, and her billing rate is $330-$350 per hour. (Id. ¶ 31 and Ex. A) Wise

4

is a fifth-year associate. (Id. ¶ 23 and Ex. A) Gomez's billing rate is $215 per hour, and Rusu's rate is $205 per hour. (Id. ¶ 31 and Exs. A, B)

"[D]istrict courts should use the 'prevailing [hourly rate] in the community' in calculating . . . the presumptively reasonable fee." Arbor Hill, 522 F.3d at 190 (second alteration in original). "[T]he 'community' for purposes of this calculation is the district where the district court sits." Id. (citing Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). "[A] district court may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those . . . rates." Id. at 191. "We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." Id. "This presumption may be rebutted . . . only in the unusual case . . . ." Id.

The billing rates for Hayes and Wise set forth above are well within the range that courts in this District have found reasonable in comparable cases for attorneys with similar experience. See, e.g., Sidley Holding Corp. v. Ruderman, No. 08 Civ. 2513 (WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), adopted, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (citing Edmonds v. Seavey, No. 08 Civ. 5646 (HB) (JCF), 2009 WL 1598794, at *2 (S.D.N.Y. June 5, 2009), adopted, 2009 WL 2150971 (S.D.N.Y. July 20, 2009); RBFC One, LLC v. Zeeks, Inc., No. 02 Civ. 3231 (DFE), 2005 WL 2105541, at *2 (S.D.N.Y. Sept. 1, 2005)) ("In terms of the market rate for representation in the Southern District of New York, recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced

5

partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals.")

The paralegal billing rates of $215 per hour and $205 per hour are, however, significantly above the rates that are generally approved in this District. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd., No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013), adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013) (finding $140 paralegal billing rate reasonable and $265 hourly rate unreasonable); N.Y.C. Dist. Council of Carpenters v. Rock-It Contracting, Inc., No. 09 Civ. 9479 (JGK) (AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010), adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010) ($125 per hour is a reasonable paralegal billing rate); Sidley Holding Corp, 2009 WL 6047187, at *25-26 (rejecting $195 paralegal billing rate and setting the reasonable rate at $125 per hour); VFS Fin., Inc. v. Pioneer Aviation, LLC, No. 08 Civ. 7655 (GBD) (AJP), 2009 WL 2447751, at *4 (S.D.N.Y. Aug. 11, 2009) (finding $125 paralegal billing rate to be reasonable). Accordingly, the paralegals' rates will be reduced to $125 per hour.

### C.     **Staffing and Time Expended**

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. The Court will exclude any hours included in the fee application that were not "reasonably expended." Hensley, 461 U.S. at 434. As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done," New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "'its own

familiarity with the case . . . and its experience generally.'" Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir 1985)).

As noted above, six Cozen attorneys and a paralegal billed time to Petitioners' motion to enforce, and three Cozen attorneys, a paralegal, and a library assistant billed time to Petitioners' fee application. While "'[t]he use of multiple attorneys . . . is not unreasonable per se,'" Simmonds v. N.Y.C. Dep't of Corr., No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (quoting Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984)) (second alteration in original), assigning numerous attorneys to a straightforward matter presents a risk of inefficiency, duplication, and unnecessary billing. See id. at *6-7.

As the Second Circuit has recognized,

> [i]n assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion. . . . [A] trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1146. The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." Id.; see also Sullivan v. Syracuse Hous. Auth., No. 89-CV-1205, 1993 WL 147457, at *3 (S.D.N.Y. May 3, 1993) (district court must ensure that fee award reflects only work that was "necessary to the litigation" and "a cost efficient use of co-counsel and outside counsel").

Petitioners' motion to enforce the May 1, 2012 judgment turned on many of the same issues addressed in the arbitration proceeding and in proceedings before this Court. Neither the scope nor the complexity of the issues presented on the motion to enforce justifies

the number of personnel who billed time on that motion. Accordingly, the attorneys' fee award will reflect only the time billed by those attorneys who played central roles – Hayes and Wise – along with the time billed by each paralegal.

Respondent argues, however, that Cozen's billing records are vague, contain duplicate entries, and reflect "block-billing." (Wolfson Decl. (Dkt. No. 51) ¶¶ 26-37) Deficient or incomplete billing records may result in a reduced fee award. See Hensley, 461 U.S. at 437 n.12 (fee application must "identify the general subject matter of . . . time expenditures"). Entries or records lacking sufficient detail "cannot be evaluated for reasonableness," and thus are not sufficient to justify a fee award. Ursa Minor Ltd. v. Aon Fin. Prods., Inc., No. 00 Civ. 2474 (AGS), 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001). Courts may likewise exclude "excessive, redundant or otherwise unnecessary hours" from the calculation, Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), or may make an across-the-board reduction to address the unnecessary expenditure of time. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (no abuse of discretion where district court reduced counsel's requested hours by 15%).

Here, Petitioners supplied time records for approximately six months of litigation. (Wise Aff. (Dkt. No. 49), Ex. B) These records include redacted copies of invoices itemizing the time spent by Cozen personnel on specific services in connection with the motion to enforce, and redacted copies of invoices reflecting time spent on the application for attorneys' fees. (Id.) These billing records are sufficiently detailed to demonstrate the number of hours expended by the Cozen attorneys and paralegals.

Respondent argues, however, that the Cozen billing records lack the level of specificity necessary to support a fee award, citing to language in billing narratives such as

8

"'review and revised,' 'client revision to reply brief,' 'outline argument,' 'review of memo,' 'review of brief,' [and] 'meeting re: research assignment.'" (Wolfson Decl. (Dkt. No. 51) ¶ 34 (citing Wise Aff. (Dkt. No. 49), Ex. B))

In Raniola v. Bratton, No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003), the court found that "Defendants' complaint about lack of specificity in the work summaries does not, in itself, justify their demand for a substantial reduction in compensable time." Although certain time entries were "fairly general, terms such as 'case preparation' or 'meeting' . . . are sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed." Id. (citing Tran v. Tran, 166 F. Supp. 2d 793, 800 (S.D.N.Y. 2001) ("Although attorneys must record the general nature of their work, they need not include detailed descriptions of the exact work performed."); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 970 F. Supp. 333, 342 (S.D.N.Y. 1997) ("[W]here an attorney's time entries are vague, courts may attempt to decipher them by reference to 'the context in which these entries occur [to determine] what work was involved.'") (quoting Lenihan v. City of N.Y., 640 F. Supp. 822, 826 (S.D.N.Y. 1986))). "The court is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys to judge whether counsel were wasting significant amounts of time or otherwise performing with less than reasonable efficiency." Id. at *4 (citing Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 875, 894-96 (S.D.N.Y. 1994), aff'd, 60 F.3d 956 (2d Cir. 1995)).

Because a determination as to the reasonableness of the number of hours expended on a case is invariably fact and context specific, the inquiry is "committed to the discretion of the district court." Clarke, 960 F.2d at 1153. Here, the descriptions of the services

9

provided are sufficient, in context, to allow the Court to evaluate the reasonableness of the time expended.

Respondent also complains that Petitioners' fee application is excessive because Attorney Wise billed for tasks "that should have been done by a clerical person or paralegal" and billed at a lesser rate. (Wolfson Decl. (Dkt. No. 51) ¶¶ 36-37) Respondent cites to Wise billing related to preparing declarations and exhibits, finalizing hard copies of filed materials, circulating Respondent's opposition to Petitioner's motion, and cite-checking the motion papers. (Id. ¶ 37) It is not unreasonable for an attorney filing a motion to be involved in preparing the substance of the motion papers, including supporting declarations and exhibits, and cite-checking the finished brief.

Finally, Respondent complains that the Cozen attorneys engaged in "block billing." (Id. ¶¶ 29-31) While "block-billing" is disfavored and may lack the specificity required for an award of attorneys' fees, it is "not prohibited in this Circuit" as long as the Court can determine the reasonableness of the work performed. Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999). "'It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 477 (S.D.N.Y. 1989) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 473 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)). Rather, courts must look "'at the big picture.'" Rodriguez, 84 F. Supp. 2d at 425 (quoting Burr v. Sobol, 748 F. Supp. 97, 100 (S.D.N.Y. 1990)).

Here, the Cozen attorneys engaged in "block billing" only on rare occasions, and the time entries provide an ample basis for the Court to evaluate the reasonableness of the work

performed. Accordingly, Cozen's limited use of block billing does not provide a basis for reducing the fee award.

### D. Lack of Success

"The product of reasonable hours times a reasonable rate does not end the inquiry." Hensley, 461 U.S. at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.'" Id.

Petitioners raised three claims in their motion to enforce this Court's May 1, 2012 judgment: (1) that Hornell was violating the Judgment by selling 16-ounce PET bottles of AriZona products to Wegman's, Food Basics, Shop-Rite, SuperFresh, Giant, Pathmark (collectively "the supermarkets"), and Target in Canada Dry's territories; (2) that Hornell was violating the Judgment by refusing to allow Canada Dry to supply 16-ounce PET bottles of AriZona products to club stores in Canada Dry Delaware's territory unless it did so at prices set by Hornell; and (3) that Hornell was violating the Judgment by selling 16-ounce PET bottles of AriZona products to Sam's Club, Costco, and BJ's club stores in Canada Dry Delaware's territory. Canada Dry Del. Valley Bottling Co., 2013 WL 5434623, at *7-9. Petitioners prevailed on the first two claims, but not on the last claim. See id. at *7-9, *12. Accordingly, the Court must consider whether the fee award should be reduced given that Petitioners prevailed on only two of their three claims.

"[T]wo questions must be addressed" in determining whether mixed results require a reduced attorneys' fee award: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

11

Hensley, 461 U.S. at 434. Where the claims are unrelated, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" Id. at 435 (quoting Davis v. Cnty. of Los Angeles, No. 73-63-WPG, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974)). However, where a party's claims "involve a common core of facts or will be based on related legal theories," the "lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation." Id.

Here, the claim Petitioners lost on is not "unrelated to the claims on which [they] succeeded." Id. at 434. All of the claims here relate to the same distribution agreements Petitioners entered into with Respondent. All claims also relate to the same language in the same arbitration award concerning the meaning of these distribution agreements, and to the same judgment enforcing that arbitration award. Two of Petitioners' claims involve Respondent's distribution of 16-ounce PET bottles of AriZona products, allegedly in violation of Petitioners' exclusive rights. Petitioners prevailed on the claim alleging improper distribution to supermarkets and Target, but lost on the claim relating to distribution to club stores. But the products at issue – 16 ounce PET bottles of AriZona iced tea and other drinks – were the same for each claim. And resolution of Petitioners' claims involved an application of the same language in the arbitration award. See Canada Dry Del. Valley Bottling Co., 2013 WL 5434623, at *7-8. The inter-relatedness of these claims is further demonstrated by the fact that Respondent raised the same defenses to each claim: (1) that Petitioners had refused to distribute AriZona products at commercially reasonable prices; (2) that Petitioners had failed to order the initial minimum order of 16-ounce PET bottles required by the distribution agreements; and (3) that

12

Petitioners had failed to properly market and distribute 16-ounce PET bottles in their territories. See id. at *7 n.5, *8 n.7.

Given the inter-relatedness of these claims, it is not practical nor appropriate to attempt to discern how many hours were spent on Petitioners' winning claim regarding distribution of 16-ounce PET bottles to supermarkets and Target, and how many hours were spent on Petitioners' losing claim regarding distribution of these same products to club stores. No reduction in the attorneys' fee award is appropriate based on a lack of success theory.

### E. Fee Award

As noted above, Petitioners seek a fee award of $139,478.00. The fees billed by Hayes, Wise, Gomez, and Rusu – at the Court-adjusted rates – amount to $103,705. Accordingly, attorneys' fees will be awarded in this amount.

## II. COSTS

Petitioners seek a costs award of $7,626.66.

### A. Legal Standard

In addition to attorneys' fees for time reasonably expended, a party may be entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." U.S. Football League, 887 F.2d at 416; see also Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a non-exclusive list of recoverable costs, including "photocopying, travel, and telephone costs"); Anderson v. City of New York, 132 F. Supp. 2d 239, 245-47 (S.D.N.Y. 2001) (allowing for recovery of service, filing, photocopying, and witness fees, as well as computerized legal research costs). Recovery is not permitted, however, for costs associated with routine office overhead. See Kuzma, 821 F.2d at 934

13

("[N]onrecoverable routine office overhead . . . must normally be absorbed within the attorney's hourly rate.").

### B. Analysis

Petitioners's proposed costs award of $7,626.66 reflects online legal research expenses, fees for legal research performed by library personnel, technological support for electronic filing of certain exhibits, and delivery of filings to the Court. (Wise Aff. (Dkt. No. 49) ¶¶ 48-52 and Ex. C) These expenses are properly included in a fee award. See, e.g., Anderson, 132 F. Supp. 2d at 245-47. In support of their application, Petitioners submit invoices from LexisNexis itemizing the research costs, as well as invoices describing the time billed by library and technological support staff. (Wise Aff. (Dkt. No. 49) Ex. C)

Respondent argues that Petitioners have not demonstrated that Cozen bills its clients for online legal research. Petitioners submitted copies of the LexisNexis and Westlaw invoices Cozen received for the relevant online legal research, however, as well as an attorney affidavit representing that Cozen passes along these fees – at a 40% discount – to its clients. (Id. ¶ 49 and n.3, Ex. C) The Court concludes that Petitioners have offered sufficient proof of the costs they seek, and have demonstrated that those costs are reasonable. Accordingly, $7,626.66 in costs is allowed.

### III. DISCOVERY REGARDING RESPONDENT'S COMPLIANCE WITH THE MAY 1, 2012 JUDGMENT

In their motion to enforce the May 1, 2012 judgment, Petitioners sought proof of Respondent's compliance with the Judgment in the form of

> (i) deposition testimony from a Hornell officer as to its compliance; (ii) copies of written correspondence to supermarkets advising them that any 12 pack 16 ounce PET bottles Hornell supplies them may not be stocked in stores in the Canada Dry Parties' territories; and (iii) copies of similar correspondence to club stores with respect to 24 pack, 16 ounce bottles in CDDV's territory.

14

(Canada Dry Br. (Dkt. No. 19) at 21) In its September 30, 2013 Memorandum Opinion and Order, this Court ruled that Hornell would be required to produce proof of compliance, and ordered Petitioners to make a submission specifying what document and deposition discovery should be ordered. Canada Dry Del. Valley Bottling Co., 2013 WL 5434623, at *11-12.

In their October 7, 2013 submission, Petitioners request discovery much broader than that originally described in their motion to enforce. Petitioners now seek:

> 1. A log of all sales made by Hornell (including its subsidiaries and affiliates) of 16-ounce PET bottles, either directly or indirectly, that were delivered to any retail outlet in Canada Dry's territories except for any club store outlets in Canada Dry Potomac's territories from May 1, 2012 to the present. The log should include the name of the customer, the date purchased, each stock selling unit ("SKU") purchased and the volume of the SKU product purchased.
>
> 2. Hornell's Comparison By Customer Report for all retailers with outlets in Canada Dry's territories for the period of May 1, 2012 through the present.
>
> 3. Any and all contracts, agreements, letter agreements or other such documents between Hornell and any other entity covering in any manner the sale, distribution, delivery or transportation of AriZona beverages in 16 ounce PET bottles to club stores, supermarkets, mass merchandisers, chain convenience stores or other such chain retailers in Canada Dry's territories.
>
> . . . Canada Dry requests that the above-categories of documents be produced on a monthly basis through December 31, 2015. Canada Dry furthermore requests that Hornell be directed to send the letter attached . . . to each of the head buyers/category manager for each club store with outlets in Canada Dry Delaware Valley's territories and for each supermarket, mass merchandiser, convenience store chain or other such chain retailer with outlets in either petitioners' territories and provide proof of delivery of those letters within thirty days.

(Petitioners' Discovery Submission (Dkt. No. 50) at 3) Petitioners also seek a deposition of an "authorized Hornell representative." (Id. at 4-5)

15

The purpose of granting discovery here is to "'advance the arbitrators' intent to stop future violations of the [distribution agreements], and [to] . . . ensur[e] that respondent complies with this Court's judgment.'" Canada Dry Del. Valley Bottling Co., 2013 WL 5434623, at *11 (quoting Ermenegildo Zegna Corp. v. Lanificio Mario Zegna, S.p.A., No. 02 Civ. 3511 (HB), 2003 WL 21709424, at *2 (S.D.N.Y. July 22, 2003)) (first alteration in original). The discovery Petitioners now seek extends far beyond what is necessary to serve this purpose.

For example, Petitioners seek discovery regarding Hornell's distribution of 16-ounce PET bottles to club stores (Sam's Club, Costco, and BJ's). This Court denied Petitioners' motion to enforce as to Hornell's alleged distribution to club stores, however. See Canada Dry Del. Valley Bottling Co., 2013 WL 5434623, at *7. Petitioners are not entitled to discovery as to a claim on which they did not prevail. For the same reason, this Court will not require Respondents to send letters to club stores describing this Court's September 30, 2013 Order.

Hornell will be ordered to provide Petitioners with a log of all sales Hornell made of 16-ounce PET bottles to supermarkets and Target outlets in Canada Dry's territories from May 1, 2012 to the present, as well as contracts, agreements, and letter agreements relating to Respondent's distribution of 16-ounce PET bottles to supermarkets and to Target outlets in Canada Dry's territories. Given Respondent's previous non-compliance with the Judgment, as well as the perpetual nature of the distribution agreements, Hornell will produce these documents to Petitioners on a monthly basis until December 31, 2015.

Petitioners' request that Hornell be directed to provide copies of its "Comparison By Customer Report" will be denied. (See Petitioners' Discovery Submission (Dkt. No. 50) at 2, 3) Production of this report is not necessary to determine whether Hornell is complying with its

obligations under the Judgment, and the report – which lists all of Hornell's sales to customers – likely contains confidential and proprietary business information.[2]

Petitioners' request for a deposition of one Hornell employee is granted. Although Respondent argues that a deposition is unnecessary in light of the declaration submitted by John Welsh, Hornell's Mid-Atlantic Regional Sales Manager for Arizona Beverages USA LLC (see Wolfson Decl. (Dkt. No. 52) ¶¶ 10-11), a deposition will permit Petitioners to more fully develop the record regarding Respondent's compliance with the Judgment. The subject matter of the deposition is limited to Respondents' distribution of 16-ounce PET bottles to supermarkets and Target outlets in Canada Dry's territories.

Petitioners also request that Respondent be directed to send letters to each "head buyers/category manager . . . for each supermarket, mass merchandiser, convenience store chain or other such chain retailer with outlets in . . . petitioners' territories" regarding this Court's September 30, 2013 Order. (Petitioners' Discovery Submission (Dkt. No. 50) at 3) The Court will reserve decision on this issue. Respondent asserts that letters similar to those Petitioners now request have already been sent to supermarkets and other outlets. (Welch Decl. (Dkt. No. 53) ¶¶ 7, 8 and Exs. A, B) Once the discovery referenced above has been taken, Petitioners may renew their request for such customer letters, in the event that the discovery demonstrates that the requested letters are necessary to ensure Respondent's compliance with the May 1, 2012 judgment.

---

[2] The parties agree that Hornell's pricing information is not relevant to the instant dispute. See Wise Reply Aff. (Dkt. No. 57) ¶ 8) Accordingly, Hornell may redact pricing information from the documents produced to Petitioners.

## CONCLUSION

Petitioners are awarded $103,705.00 in attorneys' fees and $7,626.66 in costs.

Hornell will produce the following documents to Petitioners by December 13, 2013:

(1) A log of all sales made by Hornell (including its subsidiaries and affiliates) of 16-ounce PET bottles of AriZona beverages, either directly or indirectly, that were delivered to any supermarkets and Target stores in Canada Dry Delaware and Canada Dry Potomac's exclusive distribution territories from May 1, 2012 to the present. The log will include the name of the customer, the date purchased, each stock selling unit ("SKU") purchased, and the volume of the SKU product purchased.

(2) Any and all contracts, agreements, or letter agreements between Hornell and any other entity concerning the sale, distribution, delivery or transportation of AriZona beverages in 16 ounce PET bottles to supermarkets or Target outlets in Canada Dry's exclusive territories.

Hornell will also produce to Petitioners – on a monthly basis – updated information concerning these matters through December 31, 2015. Hornell will also produce for deposition the employee most knowledgeable about the distribution of 16-ounce PET bottles of AriZona beverages to supermarkets and Target stores in Canada Dry's exclusive territories.

Dated: New York, New York
November 25, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge